No. 92-242

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MICHAEL GURSKY,

      Plaintiff and Appellant,

-vs-

PARKSIDE PROFESSIONAL VILLAGE,

      Defendant and Respondent.

FILED

MAY 5 - 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          J. Allen Bradshaw, Attorney at Law, Philipsburg,
Montana
Byron Boggs, Attorney at Law, Missoula, Montana

      For Respondent:

          Shelton C. Williams; Williams & Ranney, Missoula
Montana

          Submitted on Briefs:  December 29, 1992

                    Decided:  May 5, 1993

Filed:

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Fourth Judicial District, County of Missoula, the Honorable John S. Henson presiding. Appellant Michael Gursky (Gursky) appeals a series of District Court orders denying his request to amend his complaint and add four defendants not named in his original complaint. We affirm.

Gursky was injured on January 4, 1989, when he attempted to enter the Parkside Professional Village building in Missoula, Montana, using a metal walker. The sliding glass door at the entrance of the building opened as he approached, but it closed before he could get through the opening. As it closed, the door struck Gursky's walker and he fell backward onto the sidewalk, breaking his right hip.

At the time of the accident Gursky, then age 71, was on his way to an appointment with an ophthalmologist whose office was in the Parkside Professional Village building. He was using a walker because a stroke had weakened his right arm and leg in 1986. His wife and granddaughter drove him to the building from his home in Philipsburg, Montana, and were accompanying him to his appointment.

The two women entered the building just ahead of Gursky. They looked back when he fell, but neither of them saw him fall. Both testified in depositions that when they looked back the door was open and not moving.

Gursky filed a complaint in September 1989, naming Parkside Professional Village (Parkside) as defendant and seeking $500,000 in damages for medical expenses, lost ability to work, disability,

2

pain and suffering. He testified at his pretrial deposition that he had been unable to walk since the accident and was confined to a wheel chair. At the time of the trial in January 1992 he was in the hospital and unable to participate.

Gursky alleged in his complaint that Parkside had breached its duty to maintain the door to the building in a condition suitable for its intended purpose; that the door was in an unreasonably dangerous defective condition; and that Gursky's injuries were proximately caused by this breach of duty and the defective condition of the door.

In its answer, Parkside denied all of Gursky's allegations. Among its affirmative defenses it alleged that the accident was caused by negligence, fault, strict liability, or breach of warranty on the part of others, including the manufacturer of the door, the general contractor responsible for remodelling the building, the vendor-installer, who also was responsible for maintenance, and the architect who designed the remodelling project.

The District Court set the pre-trial conference for February 20, 1990, and issued a scheduling order. The order required the parties to join other parties and file amended pleadings by June 1, 1990, and to file all pre-trial motions by December 15, 1990.

In September 1990, Gursky's attorney moved to extend this schedule. In his supporting affidavit he testified that during the summer he had twice undergone heart surgery and that he needed additional time to amend the pleadings, join other parties, and

line up expert witnesses. He also stated that he had submitted a settlement offer to Parkside "some months ago" and had waited for a counteroffer before incurring additional costs in behalf of Gursky, whom he described as "essentially indigent."

Parkside opposed the extension on the grounds that it would delay resolution of this matter and increase the cost of defense. Nevertheless, the court granted Gursky's motion on December 18, 1990, stating in its opinion and order that "the interests of justice" would be served by extending the times set in its previous scheduling order. In its revised scheduling order the court required that all parties be joined and all amended pleadings be filed by January 20, 1991, and that all pretrial motions be filed by March 15, 1991.

On January 9, 1991, eleven days before the new deadline expired, Gursky filed an amended complaint adding the following defendants: Besam, Inc., the manufacturer of the door; Tandberg Construction, the contractor for the remodelling project; City Glass, the vendor-installer-maintainer; and Eric Hefty, the architect who designed the remodelling project. All of these entities were named in Parkside's answer to the original complaint.

Parkside moved on March 12, 1991, to strike the amended complaint on the grounds that Gursky was required to obtain leave of court, or Parkside's written consent, before filing an amended complaint, and he had failed to do so. Gursky immediately filed a motion to add additional defendants and to vacate the revised scheduling order. The District Court heard this motion on May 28,

4

1991.

At the May 28 hearing, Gursky's attorney stated that he had interpreted the court's revised scheduling order of December 18, 1990 as permission to join additional defendants. Parkside's attorney objected to further extensions, pointing out that under the Court's revised scheduling order, Gursky had thirteen months to join additional defendants and conduct discovery. Judge Henson denied Gursky's motion to add defendants and amend the complaint, commenting that "increasingly in the past six months, people are stipulating to revised scheduling orders, and so forth. And, once again, it seems that the attorneys are controlling the court's calendar."

On June 4, 1991, the District Court granted Parkside's motion to strike Gursky's amended complaint, based on two grounds: (1) under Rule 15(a), M.R.Civ.P., Gursky could amend his complaint only with the court's permission or written consent of the other party, and Gursky had neither; and (2) under Uniform District Court Rule 2, Gursky was required to file an answer to Parkside's motion to strike the amended complaint but had not done so.

Gursky appealed the District Court's order of June 4, but on August 13, 1991, this Court granted Parkside's motion to dismiss the appeal. In September 1991, the District Court ruled on the motion for summary judgment that Parkside had filed in December 1990, granting summary judgment with respect to all theories of liability except negligence. Gursky then filed a new complaint, on November 15, 1991, naming Besam, Inc., City Glass, and Tandberg

5

Construction as defendants.

A jury trial was held on the issue of Parkside's negligence on January 2, 1992. After six days of testimony, the jury found that Parkside was not negligent. Gursky moved for a new trial, alleging as errors the court's refusal to allow joinder of all defendants and its refusal to instruct the jury that absent parties could not be blamed for Gursky's injuries. The District Court denied this motion on March 6, 1992, and Gursky appealed.

The only issue on appeal is whether the District Court abused its discretion in not allowing Gursky to join additional defendants. Gursky requests that we remand the case to the District Court for a new trial and that he be allowed to join the additional defendants.

The decision to grant or deny a motion to amend a pleading lies within the discretion of the district court, and we will reverse its decision only for an abuse of that discretion. Lindeys, Inc. v. Professional Consultants (1990), 244 Mont. 238, 797 P.2d 920. In certain cases we have concluded that the district court abused its discretion in denying a party leave to amend a pleading, because the court offered no valid reason for denying leave. See Hobble-Diamond Cattle Co. v. Triangle Irrigation Co. (1991), 249 Mont. 322, 815 P.2d 1153; Priest v. Taylor (1987), 227 Mont. 370, 740 P.2d 648; White v. Lobdell (1984), 227 Mont. 370, 678 P.2d 637. "[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent

6

with the spirit of the Federal Rules." White, 678 P.2d at 642 (quoting Foman v. Davis (1962), 371 U.S. 178, 181-82, 83 S.Ct. 227, 229-30, 9 L.Ed.2d 222, 226).

Here, however, the District Court had a valid reason for denying leave to amend the complaint, though this was expressed in its order granting Parkside's motion to strike the amended complaint and not in its order denying leave to amend. Under Rule 2, Uniform District Court Rules, failure to file an answer to a motion within ten days "shall be deemed an admission that the motion is well taken." Gursky failed to answer Parkside's motion to strike his amended complaint; therefore, the District Court had the authority to grant the motion and did not abuse its discretion in so doing.

The District Court accommodated Gursky by extending the time in which he could amend his complaint, despite Parkside's objections. Having granted that extension, the court did not abuse its discretion in denying further extensions.

AFFIRMED.

_____
Justice

We concur:

_____

_____

_____
Justices

7

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion. I would hold that the District Court abused its discretion by denying plaintiff's motion to amend his complaint and would reverse the District Court.

In its answer, defendant alleged in its second affirmative defense that if the incident which was the subject of plaintiff's complaint occurred as alleged:

> [T]he occurrence was caused by the negligence, fault, strict liability, or breach of warranty on the part of other parties or individuals, including but not limited to, plaintiff's relatives who accompanied him, Margaret Gursky and Sheila Hartman; the manufacturer, Besam, Inc.; the general contractor on the remodeling project in which the door was installed, Tandberg Construction; the vendor, installer, and maintainer of the door, Michotte Distributors and City Glass; the architect who designed the remodeling project, Eric Hefty. Defendant asserts under MCA § 27-1-703 that the fault of all such individuals and entities may have contributed to the injury complained of and should be considered by the trier of fact in its apportionment of responsibility in this case.

Presumably, before making such an allegation, the defendant and its attorneys investigated the circumstances surrounding plaintiff's complaint and had a factual basis for making the above allegation. Otherwise, the allegation would have violated Rule 11, M.R.Civ.P. It can also be presumed that since defendant sought to reduce the degree of its own responsibility by blaming other third parties, that it was prepared to prove at the time of trial the nature of the third parties' conduct. Under these circumstances, it seems ironic that the same defendant objected so strenuously to naming these third parties as defendants so that they could appear at the time of trial and defend themselves.

8

Understanding that defendant sought to blame people for plaintiff's injuries who would not be present to refute the allegation, plaintiff moved the District Court, on September 21, 1990, to modify the scheduling order and allow additional time within which to join those other parties. In support of that motion, plaintiff's attorney filed his affidavit showing that he was a sole practitioner and that he had undergone two surgical procedures for his heart during the year since the complaint had been filed. In spite of this obvious justification for extending the time within which to comply with the scheduling order, defendant opposed the motion on the grounds that it would be severely prejudiced if plaintiff were allowed additional time within which to amend his pleadings. Defendant alleged that any additional delay would have an adverse impact on defendant.

However, on December 18, 1990, the District Court overruled defendants' questionable objection and correctly pointed out that:

> [I]t is the clear policy of the Montana Rules of Civil Procedure that all persons materially interested should be joined so that in one suit the court may hear and make a complete disposition of all disputes arising from the same transaction. Rule 19(a), Advisory Committee Notes, Annotations, MCA, p. 457 (1990), Wheat v. Safeway Stores, Inc., 146 Mont. 105, 112, 404 P.2d 317, [321] (1965), Julian v. Mattson, 219 Mont. 145, 710 P.2d 707 (1985).

> Furthermore, in the present case, defendant's Second Affirmative Defense asserts that other persons have caused and are liable for plaintiff's injuries, and defendant asks that any judgment against him be reduced accordingly.

For these reasons, the District Court granted plaintiff's motion and extended the dates set by the court's previous scheduling

9

order. On the same date, the District Court entered a new scheduling order which provided that all additional parties must be joined by January 20, 1991.

While it is true that technical compliance with Rule 15(a), M.R.Civ.P., required that consent of the District Court be obtained before plaintiff filed his amended complaint, it is equally true that the spirit of that rule was complied with in every significant respect. Defendant was aware of the parties that plaintiff sought to join. The District Court understood why the parties were necessary to a resolution of all the issues raised in this action, and the District Court explained in its order why additional time should be granted within which to amend plaintiff's complaint so that the additional parties could be joined. The trial court then set a deadline within which amended pleadings were to be filed. On January 9, 1991, eleven days before the expiration of the court's deadline, plaintiff's attorney filed an amended complaint in which he named as additional defendants only those parties to whom defendant sought to pass blame for plaintiff's injuries. The pleadings in this case show that the amended complaint was served on defendant's attorney on that same date.

At that point, the purpose and spirit of the rules of civil procedure had been fully complied with. However, what should have been a simple issue did not end there. On January 21, 1991, one day after the court-imposed deadline for amending the pleadings, defendant's attorney filed a document entitled Brief in Opposition to Motion to Defer Response to Motion for Summary Judgment in which

10

he, for the first time, suggested that plaintiff's amended complaint had been filed without consent of court, and therefore, in violation of Rule 15(a).

On March 14, 1991, plaintiff filed a formal motion to add additional defendants and supported it with an affidavit and brief. The District Court and the majority opinion make much of the fact that no brief was filed in response to defendant's motion to strike the amended complaint. However, the issue raised in plaintiff's motion to amend was the same issue resolved by defendant's motion to strike and one brief should have been sufficient for both purposes.

In support of his motion, plaintiff correctly pointed out to the District Court that we have previously held in *Wheat v. Safeway Stores, Inc.* (1965), 146 Mont. 105, 112, 404 P.2d 317, 321, that the purpose of our rules of joinder found in Rules 19 and 20, M.R.Civ.P., is to promote trial convenience and prevent multiplicity of lawsuits. Furthermore, the rules are intended to expedite final resolution of litigation by including in one suit all parties directly interested in the same controversy.

Even though defendant was fully aware of plaintiff's intention and the nature of his amended complaint prior to the deadline for filing the complaint, and could have in no way been prejudiced by the lack of formal District Court consent until a later date, defendant again opposed plaintiff's motion on the grounds that to allow amendment would result in additional delay of the trial. For

11

reasons which will be discussed later, defendant's opposition to plaintiff's motion was specious at best.

Plaintiff's motion was set for oral argument on May 28, 1991. At the conclusion of oral argument, plaintiff's motion was verbally denied in open court. However, instead of basing its denial on the merits of plaintiff's motion, as opposed to any potential harm to defendant, the District Court gave the following explanation for its decision:

> Well, the purpose in establishing these scheduling orders, which I established a number of years ago, is to try and properly manage these cases . . . . And I have noticed increasingly in the past six months that people are stipulating to revised scheduling orders, and so forth. And, once again, it seems that the attorneys are controlling the court's calendar. So the motion for leave to add the parties and amend the complaint is denied.

On June 5, 1991, the District Court entered its written order denying plaintiff's motion to amend his complaint so that he could name additional parties as defendants. On June 10, 1991, five days later, the attorney for defendant who had been so concerned about prejudice to his client from delay, signed and filed a stipulation regarding the trial date which included the following statement: "In this matter, the attorney representing the defendant had a busy and continuous trial schedule for the next several months." On that basis, the trial date set for June 1991 was vacated without further date. This case finally went to trial on January 2, 1992, over a year after plaintiff moved to amend his complaint.

12

For the following reasons, I conclude that the District Court abused its discretion when it denied plaintiff's motion to amend his complaint:

1. Rule 15(a), M.R.Civ.P., which requires District Court approval before an amendment to the complaint can be filed after defendant has answered the original complaint, also requires that approval "shall be freely given when justice so requires."

2. Rules 19 and 20, M.R.Civ.P., favor joinder of all parties involved in the same dispute in one action in order to avoid multiplicity of claims and unnecessary litigation.

3. Prejudice to defendant would not have resulted from granting plaintiff's motion to amend. Defendant was aware of the additional defendants from the time it filed its answer on January 15, 1990. In fact, defendant was sufficiently familiar with their role in this incident that it filed an answer blaming them for plaintiff's injuries in order to reduce its own liability for plaintiff's damages.

4. On December 18, 1990, the District Court agreed that because of the health problems experienced by plaintiff's attorney, it would be reasonable to extend the deadline for adding additional parties until January 20, 1991. In all practical respects, plaintiff complied with that deadline when he filed an amended complaint and served it on defendant on January 9, 1991. The only defect in the amended complaint was a technical one which he sought to cure with his motion to amend on March 14, 1991.

13

5.    The District Court gave no basis for denying plaintiff's motion on its merits.  It gave some unrelated and irrelevant reason regarding stipulations to revise scheduling orders which were encroaching on the court's effort to control its own trial calendar.  This case did not involve a stipulation, and for all practical purposes, the court's scheduling order had been fully complied with.

It is obvious that defendant's concern was not with potential delay to his client or the prejudice that would result therefrom. Neither was defendant concerned about surprise from an unexpected amendment for which it could not prepare.  Defendant went to great lengths to prevent plaintiff from joining additional defendants because it would be easier for defendant to blame others if they were not there to defend themselves.  The District Court's arbitrary denial of plaintiff's motion to amend his complaint reinforced use of procedural technicality as a litigation strategy and diminished the likelihood that this case would be resolved on its merits.

For these reasons, I would reverse the order of the District Court and remand this case to the District Court for trial of plaintiff's claim against all the defendants that he sought to join, including Parkside Professional Village.

_____
                        Justice

14

May 5, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

J. Allen Bradshaw
Attorney at Law
P.O. Box 490
Philipsburg, MT    59858

Byron Boggs
Attorney at Law
336 Ryman
Missoula, MT    59802

Shelton C. Williams
Williams & Ranney
235 E. Pine
Missoula, MT    59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
      Deputy